UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JUN 17 2019

JULIA C. DUDLEY, CLERK
BY: /s/ 
     DEPUTY CLERK

Sherry Rodriguez,
      Plaintiff,

V.

Case No. 5:19cv00048

Warden John A. Woodson, Sgt. Benjamin J. Lokey, C.O. Ryder, C.O. Head, C.O. Hale, and Other John and Jane Doe Augusta Correctional Center (ACC) and VA. DOC Officials, and Craigsville, Augusta County, Virginia Law Enforcement Officials,
      Defendants.

## CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. §1983

**NOW COMES** the above named Plaintiff, and as causes of action against the above named Defendants, pleads the following:

### NATURE OF THE CASE

(1) This action is brought forth by the Plaintiff pursuant to 42 U.S.C. §1983, alleging that Defendants have violated her First and Fourth Amendment Rights to the U.S. Constitution, for which she seeks declaratory, injunctive, compensatory, and punitive relief.

### JURISDICTION

(2) The Court has original jurisdiction over this action under 28 U.S.C. §1331.

### VENUE

(3) The Court has venue over this case under 28 U.S.C. §1391(b).

### PARTIES

(4) Plaintiff, Sherry Rodriguez, was at all relevant times a private citizen visiting, being searched (including strip searched), and/or detained at

Augusta Correctional Center, 1821 Estaline Valley Rd., Craigsville, VA. 24430.

(5) Defendants, at all relevant times to this complaint, were as follows: Warden John A. Woodson, the Warden at ACC; Benjamin J. Lokey, a Sergeant at ACC; C.O. Ryder, a female Correctional Officer (C.O.) at ACC; C.O. Head, a female C.O. at ACC; C.O. Hale, a female C.O. at ACC; and Other John and Jane Doe ACC Staff and Craigsville, Augusta County, Virginia Law Enforcement Officials/Patrolmen.

(5)(a) Defendants acted under color of state law and are being sued in their individual and official capacities.

## FACTS

(6) The Augusta Correctional Center (ACC herinafter) is one of many prisons of the Virginia Department of Corrections (DOC hereinafter) which permits private citizens to visit their loved ones incarcerated therein.

(7) The DOC, and ACC in particular, permits both physical contact visits ("contact visits" hereinafter) and non-physical visits ("no-contact visits" hereinafter). "Contact Visits" are those in which the prisoner and his visitor are permitted to sit across from each other, with no physical barriers, and embrace one another at the beginning and end of the visit, while "No-Contact Visits" are those in which the prisoner and his visitor are not permitted any physical contact and which are conducted with physical barriers (i.e. partitions and/or had via video monitors).

(8) Plaintiff Sherry Rodriguez (Rodriguez hereinafter) has visited her fiance, Jawawn Hale, at ACC each weekend and holiday from Febuary 2017 to February 2019, with little exception; those exceptions being when her right to visit was denied and/or suspended, and the less than 10 times she did not arrive to visit for other reasons. Jawawn Hale, VA. DOC #1018960, is a prisoner at ACC, and was at all times relevant to this complaint.

(9) The DOC has had, and believes it still has, a problem with contraband, drugs and cell phones in particular, entering its prisons via its own staff members, visitors (of prisoners, or for other reasons), and the mail.

(10) In light of the above, supra (9), the DOC has taken steps to limit, if not eliminate, the amount of contraband that enters its prisons by: (i) requiring its staff members and visitors to have their bodies electronically scanned; (ii) not allowing prisoners to receive the actual personal mail that is sent to them, but only photcopies thereof, unless its legal mail (of which only the original envelope is withheld, and a photocopy thereof is provided instead); and (iii) limiting the number of personal visits a prisoner has; among other things.

(11) The DOC believes that the greater the number of visits a prisoner has the greater the opportunity and risk for that prisoner to smuggle in contraband.

(12) Some ACC staff members, and Defendant Lokey in particular, have had a problem with the number of visits Rodriguez was having with her fiance Jawawn Hale (Hale hereinafter); and, because of that, suspected she was bringing contraband into ACC.

(13) Each visit Rodriguez had with Hale at ACC was within the limits of, and in accordance with requirements of, the ACC's and DOC's visiting policy; and, they were never granted a greater number of visits than the ACC's and DOC's visiting policy allowed.

(14) On or about 3-26-17, Rodriguez arrived at ACC to visit Hale, but was met by Sgt. Lokey and other ACC staff and told that she needed to answer some questions first; i.e., to be interrogated.

(15) The questioning of Rodriguez, supra (14), lasted approximately 4 hours, during which she was not permitted to leave. She was told that if she refused to talk to them (i.e., Sgt. Lokey, and other John and Jane Doe officials) she would be arrested; and, that if she did talk to them it would look good for her before the Commonwealth.

3

(16) During this questioning/interrogation of Rodriguez, supra (14)-(15), Defendant Lokey and the other John and Jane Doe Officials accused her of bringing drugs into the prison.

(17) Although Rodriguez told them, supra (16), she had never brought drugs into the prison, and would not do so, she was required to submit to a strip search.

(18) During this strip search of Rodriguez, supra (17), she was humiliated; she was told to remove all of her clothing, was told to bend over, squat and cough, and during which the female staff members conducting it engaged in laughter.

(19) No drugs were found on Rodriguez at that time, supra (18), and nor have any ever been found on her, or Hale, during any of her visits at ACC; and nor have any drugs ever been found on her during any visit at any other DOC facility.

(20) Rodriguez has only been found to have her prescription blood pressure medication inside her car in the parking lot of ACC, which is permitted.

(21) After the above, supra (14)-(19), Rodriguez was not allowed to visit Hale, and her visiting privileges were suspended until June 2017.

(22) Moreover, during the aforementioned interrogation and strip search, supra (14)-(19), Defendant Lokey told Rodriguez that Hale was cheating on her, talking to all kinds of other women and engaging in phone sex with them, claiming that ACC had the recorded phone conversations to prove it.

(23) Defendant Lokey told Rodriguez those things, supra (22), in order to cause her mental and emotional distress and deter her from continuing to visit Hale, and it did cause her to suffer a mental and emotional breakdown.

(24) Defendant Lokey also told other visitors, of whom Rodriguez had grown to know and develope friendships and support networks with, that she was bringing drugs into the prison and that it would be wise for them to stay away from

4

her; and, as a result, nearly all of them stopped talking to her, refused to even acknowledge her, resulting in her loss of their friendship and support network.

(25) Starting on 3-26-17, to 2-2-19, Rodriguez was subjected to no less than 10 strip searches by ACC staff, ordered by Defendant Lokey, conducted by Defendants Ryder, Head, and Hale, and condoned by Defendant Woodson.

(26) The strip searches, supra (25), consisted of both full body strip searches and searches of Rodriguez's upper body, namely her breasts.

(27) During those strip searches, supra (25)-(26), she was repeatedly told that she had something in her breasts, a lump, so often that she feared she had breast cancer, was terrified of the idea, to the point that she underwent an intrusive exam only to be informed that she did not have any such lump or breast cancer.

(28) In addition to the strip searches, supra (25)-(27), Rodriguez was required to have her car searched in the ACC parking lot by Defendant Lokey and other ACC staff, and other John and Jane Doe Law enforcement officials, patrolmen, at least three times, during which she was not allowed to leave the parking lot.

(29) During those searches of her car, supra (28), nothing was found that ACC staff objected to other than Rodriguez's blood pressure medication; and, she had her visit denied that day (7-28-18) on that basis.

(30) A visitor to ACC is permitted to have their necessary prescription medication left in their car while they visit their loved ones; and, moreover, Rodriguez's blood pressure medication, which was secured in her car, posed no threat to ACC, its staff members, or prisoner, to warrant her being denied to visit.

(31) Rodriguez lives in Roanoke, VA., and it takes her ___ hours for her to make it to ACC , through mountain terrain, in Craigsville, VA. When she arrives there, only to have her visits denied, is very distressing for her, and very

5

straining on her and Hale's relationship.

(32) On 2-2-19, Rodriguez arrived at ACC to visit Hale, only to be told that not only was her visit for that day denied, but that she was banned from visiting ACC indefinitely. Defendant Lokey delivered her the news, and further added "If you play around in mud, you're gonna get dirty."

(33) Rodriguez has written to Defendant Woodson complaining to him, in detail, of the abuses that she and other visitors have had to endure at ACC just to visit their loved ones, namely the routine strip and car searches and stops, and being interrogated, intimidated, and forced to submit to these abuses or be denied the opportunity to visit, and Defendant Woodson has failed to take any action to stop the abuses.

(34) Rodriguez has written to Defendant Woodson at least three different times, and has done so by certified mail on at least two of those occasions, the most recent of which was May 2019, calling on him for the final time to take some form of action to address and put an end to the aforesaid abuses, and citing to him the U.S. Constitutional Amendments being violated, along with case law in support, all of which Defendant Woodson has turned a blind eye to, ignored, and, in doing so, condoned the actions of his ACC staff towards Rodriguez, which are actions of ACC staff that constitute ACC's adopted practices and policies.

(35) At no time when Rodriguez was stopped, searched, strip searched, seized, interrogated, humiliated, slandered, and/or defamed, did Defendants have any probable cause to do so, nor reasonable suspicion to do so.

(36) Those acts were committed against Rodriguez, supra (14)-(35), in order to deter her from exercising her right to associate and converse with her fiance Hale, and was in retaliation for her having done so, and exercising not only her lawful right to do so, but privilege to do so according to the ACC's and DOC's written visiting policy.

6

(37) As a proximate result of the aforementioned actions and/or omissions of Defendants, supra (14)-(36), Rodriguez has suffered, and continues to suffer, extreme emotional and mental distress, humiliation, defamation, loss of companionship, friendship, support, good standing in the community, and other irreparable harms, including an extreme fear and paranoia of law enforcement officials.

## CAUSES OF ACTION

(38) The aforementioned actions and/or omissions of Defendants, supra (14)-(36), constitute the following causes of action:

   (i) Violations of the First Amendment to the U.S. Constitution, which prohibited their Retaliation against Rodriguez for exercising her Right to Associate and Communicate with her Fiance Hale; and

   (ii) Violations of the Fourth Amendment to the U.S. Constitution, which prohibited their illegal searches and seizures of Rodriguez and her belongings, and the false imprisonment of her.

## JURY TRIAL DEMAND

(39) Rodriguez demands a trial by jury.

## RELIEF SOUGHT

(40) Rodriguez requests the following relief as a result of the injury and harm she's suffered at the hands of Defendants' actions and/or omissions as pleaded above, supra (14)-(37):

   (i) Declaratory Relief, declaring each Defendant to have violated her First and Fourth Amendment Rights to the U.S. Constitution;

   (ii) Injunctive Relief, enjoining Defendants to end their abusive and unlawful practices, as pleaded above, to restore her visiting privileges at ACC, and/or transfer Hale to a facility where she will be permitted to visit him without fear of further abuse, retaliation and/or harassment;

   (iii) Compensatory Damages in the amount of $250,000;

   (iv) Punitive Damages in the amount of $250,000; and

   (v) All other costs and fees incurred as a result of Rodriguez bringing forth this action and having it litigated, including attorney fees.

Dated this 17th day of June, 2019.

Signed: *Sherry A Rodriguez now known as*
Sherry Rodriguez

*Sherry A Carter-Hale*

1499 Horseshoe Rd Arrington VA 22922

(434) 826-8685

CC